E-FILED
Thursday, 17 December, 2009  03:39:24 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| WILLIAM A. GINGLEN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No.  07-3058 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Petitioner William Ginglen's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (d/e 1) (Petition), Ginglen's Amended § 2255 Motion with Supporting Memorandum (d/e 12) (Amended Petition), and Ginglen's Motion for Evidentiary Hearing and Appointment of Attorney (d/e 45).  For the reasons set forth below, the Petition and Amended Petition are denied.  Ginglen's Motion for Evidentiary Hearing and Appointment of Attorney is, likewise, denied.

## STATEMENT OF FACTS

The following background facts are taken from <u>United States v.</u>

Ginglen, 467 F.3d 1071 (7th Cir. 2006).  Between November 10, 2003, and July 12, 2004, William Ginglen (Ginglen) robbed several central Illinois banks at gunpoint.  On August 19, 2004, one of Ginglen's three sons, Jared, an officer for the Peoria, Illinois Police Department, recognized the bank robbery suspect in photographs as his father.  Jared informed his brothers Garrett and Clay of his realization, and the three men decided to go to their parents' house in Lewiston, Illinois, to confront their father and convince him to turn himself in.  If he refused to do so, the brothers planned to take him in forcibly.  However, when the brothers arrived, Ginglen was not home.  While the brothers were looking through the house for their father, they saw a pair of shoes, pants, and a shirt that matched those worn by the bank robber in the photographs.

The brothers then contacted the Lewiston police.  The police used the brothers' observations to obtain a search warrant for Ginglen's home.  A subsequent search of the home uncovered the clothes matching those worn by the robber as well as information which revealed that Ginglen was cheating on his wife and spending the proceeds from the bank robberies on his mistress.  Four days after the police executed the search warrants, Ginglen's wife voluntarily consented to the search and seizure of a

computer she shared with her husband.

The following information is taken from the record of Ginglen's criminal case.  <u>United States v. Ginglen</u>, C.D. Ill. Case No. 04-30052.  On August 20, 2004, Ginglen was charged by Complaint (Case No. 04-30052, d/e 1) with one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) & (d).  He was subsequently indicted in September 2004.  <u>Case No. 04-30052, Indictment (d/e 8)</u>.  Ginglen filed a Motion to Suppress (Case No. 04-30052, d/e 11) in October 2004, which this Court denied, following a hearing on November 18, 2004.  <u>Case No. 04-30052, Minute Entry, dated November 18, 2004</u>; <u>Case No. 04-30052, Transcript of Proceedings held November 14, 2004 (d/e 37) (Suppression Hearing Transcript)</u>.[1]

On December 3, 2004, a grand jury returned a fourteen-count Superseding Indictment (Case No. 04-30052, d/e 14), charging Ginglen with seven counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) & (d) and seven corresponding counts of carrying and using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1).

---

[1]The Court notes that the transcript erroneously indicates that the hearing was held November 14, 2004.  The actual date is November 18, 2004 as reflected in the docket.

Ginglen was arraigned on the Superseding Indictment on December 9, 2004, at which time Magistrate Judge Byron Cudmore advised him of the charges and penalties.  Case No. 04-30052, Minute Entry, dated December 9, 2004.

On January 6, 2005, a grand jury returned a fourteen-count Second Superseding Indictment (Case No. 04-30052, d/e 16), again charging Ginglen with seven counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) & (d) and seven corresponding counts of carrying and using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1). Ginglen was arraigned on the Second Superseding Indictment on January 12, 2005, at which time Ginglen, who was represented by counsel, waived the reading of the Indictment and admonishment of statutory penalties. Case No. 04-30052, Minute Entry, dated January 12, 2005.

On June 30, 2005, the Court was informed that Ginglen wished to plead guilty pursuant to a Plea Agreement.  Case No. 04-30052, Text Order, dated June 30, 2005.  The Plea Agreement (Case No. 04-30052, d/e 23), signed and dated July 8, 2005, was filed with the Court.  In the Plea Agreement, Ginglen reserved his right to appeal the denial of his Motion to Suppress, but waived his right to appeal any other issues.  Plea Agreement,

4

p. 5, ¶ 10.  Additionally, under the terms of the Plea Agreement, Ginglen waived his right to collaterally attack his conviction or sentence. Id., p. 5-6, ¶ 11.

On July 8, 2005, a change of plea hearing was held before this Judge. Case No. 04-30052, Minute Entry, dated July 8, 2005; Case No. 04-30052, Transcript of Proceedings held July 8, 2005 (d/e 36) (Plea Transcript).  At the plea hearing, Ginglen was placed under oath, and the Court conducted a colloquy to determine whether Ginglen's plea was knowing and voluntary. Plea Transcript, p. 5-71; see also Fed. R. Crim. P. 11.  During the colloquy, the Court discussed the terms of the Plea Agreement as well.  At the conclusion of the hearing, the Court accepted Ginglen's plea of guilty to counts 1, 3, 5, 7, 9, and 11-14 of the Second Superseding Indictment.  Case No. 04-30052, Minute Entry, dated July 8, 2005; Plea Transcript, p. 71-72.

Ginglen was sentenced on December 29, 2005.  Case No. 04-30052, Minute Entry, dated December 29, 2005; Case No. 04-30052, Transcript of Proceedings held December 29, 2005 (d/e 26) (Sentencing Transcript). There were no objections to the Presentence Report (Case No. 04-30052, d/e 32), and the Court adopted its findings.  Ginglen was sentenced to ninety-seven months imprisonment on each of the seven bank robbery

counts, Counts 1, 3, 5, 7, 9, 11 and 13 of the Second Superseding Indictment, with these sentences to run concurrently.  Ginglen was also sentenced to eighty-four months imprisonment on the § 924© charge in Count 12 of the Second Superseding Indictment, with this sentence to run consecutively to the one imposed on Count 11.  Ginglen was also sentenced to 300 months imprisonment on the § 924© charge in Count 14 of the Second Superseding Indictment, with this sentence to run consecutively to those imposed on Counts 11 and 13.  Thus, Ginglen was sentenced to a total of 481 months imprisonment.  Ginglen was also ordered to serve five years on supervised release following his release from prison, to pay $56,382.00 in restitution, and to pay a $900.00 special assessment.  Counts 2, 4, 6, 8, and 10 of the Second Superseding Indictment were dismissed on motion of the Government.

On January 3, 2006, Ginglen, through counsel, filed a Notice of Appeal (Case No. 04-30052, d/e 27), challenging the denial of his Motion to Suppress.  The appeal was argued on September 28, 2006, and the Court of Appeals issued an opinion affirming this Court's ruling on November 6, 2006.  Ginglen, 467 F.3d 1071.

ANALYSIS

Ginglen now seeks relief under 28 U.S.C. § 2255.  A § 2255 motion allows a person in federal custody to attack his sentence collaterally on constitutional grounds, because it is otherwise illegal, or because the court that imposed it was without jurisdiction.  28 U.S.C. § 2255(a).  Ginglen raises a number of grounds for relief.  This Court must determine whether he is entitled to an evidentiary hearing on any of these claims.  Section 2255 Rule 8(a).  Under Seventh Circuit precedent, "[a] section 2255 petitioner is entitled to an evidentiary hearing on his claims, when he alleges facts that, if proven, would entitle him to relief." Stoia v. United States, 22 F.3d 766, 768 (7th Cir. 1994).  However, before he is entitled to an evidentiary hearing, Ginglen bears the burden of filing a detailed and specific affidavit showing that he has actual proof of the allegations, rather than mere unsupported assertions.  Galbraith v. United States, 313 F.3d 1001, 1009 (7th Cir. 2002).

In addition to the Petition and Amended Petition, Ginglen has filed a number of supplemental pleadings adding claims for relief.  For clarity, the Court will apply a consecutive numbering system to Ginglen's claims, regardless of the pleading in which they were presented.  Ginglen asserts the

following grounds for relief in his Petition and Amended Petition:

1.   his guilty plea was unknowing, unintelligent, and involuntary;

2.   ineffective assistance of trial counsel in connection with the guilty plea, specifically, failure to explain the Plea Agreement, failure to prepare Ginglen for the change of plea hearing, failure to apprise Ginglen of the mandatory minimum sentences under 18 U.S.C. § 924©, and failure to follow through on competency issues;

3.   ineffective assistance of trial counsel with respect to failure to investigate, failure to call witnesses at the detention hearing and to appeal the Magistrate Judge's detention order, failure to call witnesses at the hearing on the Motion to Suppress, failure to communicate, failure to act, misleading the court, failure to attend a presentence interview with Ginglen and probation officer, and failure to provide effective assistance at sentencing;

4.   ineffective assistance of appellate counsel, specifically failure to perform as contracted, substitution of counsel without authorization, failure to file requested motions, and failure to communicate; and

5.   his sentence was improper due to impermissible double counting, was unreasonable and irrational, failed to comply with 18 U.S.C. § 3553, and resulted in a violation of Ginglen's rights under the Fifth and Eighth Amendments.

Ginglen raised the following grounds for relief in various supplemental

filings allowed by the Court as set forth below:

6.   ineffective assistance of counsel regarding the failure to challenge the validity of search warrants authorizing search of computers, Motion to Expand Record (d/e 28);

8

7.     ineffective assistance of counsel for failing to assert Ginglen's statutory and constitutional right to a speedy trial, <u>Motion to Expand Record</u> (d/e 31);

8.     ineffective assistance of counsel for failing to challenge the sufficiency of the Second Superseding Indictment, <u>Motion to Expand Record</u> (d/e 33);

9.     ineffective assistance of counsel for failing to challenge Ginglen's post-sentencing incarceration outside the State of Illinois on Illinois Constitutional grounds, <u>Motion to Expand Record</u> (d/e 38);

10.    ineffective assistance of counsel with respect to the response to the Government's Federal Rule of Evidence 404(b) evidence, <u>Motion to Expand Record</u> (d/e 43); and

11.    ineffective assistance of counsel with respect to counsel's failure to pursue and present the fact that the sentence which exceeded Ginglen's life expectancy was an abuse of discretion, <u>Motion to Expand Record</u> (d/e 58).

Ginglen's Plea Agreement contains a provision waiving collateral attack. <u>Plea Agreement</u>, p. 5, ¶ 11. The Seventh Circuit has explained that such waivers are enforceable as long as: (1) the waiver was knowing and voluntary and (2) the petitioner cannot establish ineffective assistance of counsel in negotiating the agreement. <u>Mason v. United States</u>, 211 F.3d 1065, 1068 (7th Cir. 2000). An express, unambiguous waiver, made knowingly and voluntarily, is enforceable. <u>Jones v. United States</u>, 167 F.3d 1142, 1145 (7th Cir. 1999); <u>see also</u> <u>United States v. Sines</u>, 303 F.3d 793,

798 (7th Cir. 2002).  However, an otherwise valid waiver does not deprive a petitioner of the ability to pursue a collateral attack "that relates directly to the negotiation of the waiver, such as a claim that the waiver was involuntarily made, was based on an impermissible factor such as race, exceeds the statutory maximum, or was made without effective assistance of counsel."  <u>Sines</u>, 303 F.3d at 798.  Thus, the Court turns its attention first to Grounds 1 and 2, which relate to the negotiation of Ginglen's collateral attack waiver.

I.    <u>GROUND 1</u>

In Ground 1, Ginglen asserts that his guilty plea and corresponding § 2255 waiver were unknowing, unintelligent, and involuntary.  The Court must determine whether the terms of the collateral attack waiver are unambiguous and whether the record shows that Ginglen knowingly and voluntarily entered into the agreement.  <u>Jones</u>, 167 F.3d at 1145.  The Court turns first to the language of the waiver.

The applicable paragraph of the Plea Agreement states that Ginglen "understands that he has a right to attack the conviction and/or sentence imposed collaterally," that he and his attorney have reviewed 28 U.S.C. § 2255, and that Ginglen understands his rights under that statute.  <u>Plea</u>

Agreement, p. 5, ¶ 11.  The Plea Agreement further provides that Ginglen,

understanding those rights and having thoroughly discussed them with

defense counsel:

> knowingly and voluntarily waives his right to collaterally attack
> the conviction and/or sentence. . . .  Regardless of any advice the
> defendant's attorney may have given the defendant, in exchange
> for the concessions made by the United States in this plea
> agreement, the defendant hereby knowingly and voluntarily
> waives his right to collaterally attack the conviction and/or
> sentence.  The rights waived by the defendant include his right
> to challenge the amount of any fine or restitution, in any
> collateral attack, including, but not limited to, a motion brought
> under Title 28, United States Code, Section 2255.

Id., p. 5-6, ¶ 11.  Clearly, the terms of Ginglen's collateral attack waiver are

unambiguous.  In United States v. Linder, the Seventh Circuit examined

similar language, specifically "defendant knowingly waives the right to

appeal or contest, under 18 U.S.C. § 3742 or 28 U.S.C. § 2255, or

otherwise, his conviction and the resulting sentence," and determined that

it "could not be clearer."  Linder, 530 F.3d 556, 561 (7th Cir. 2008).  Thus,

the Court turns to the question of whether the record shows that Ginglen

knowingly and voluntarily entered into the Plea Agreement.

Ginglen asserts that he did not knowingly and voluntarily enter into

the Agreement and that he was not competent to do so.  As the Supreme

Court has recognized, the focus of a competency inquiry is the defendant's mental capacity, and the question is whether he had the ability to understand the proceedings.  In contrast, the purpose of the "knowing and voluntary" inquiry is to determine whether the defendant actually understood the significance and consequences of a particular decision and whether the decision is uncoerced.  Godinez v. Moran, 509 U.S. 389, 401 n.12 (1993).  As set forth below, the record in the instant case reveals that Ginglen was competent to enter into the Plea Agreement and that he did so knowingly and voluntarily.

During the change of plea hearing, the Court engaged in a lengthy exchange with Ginglen after Ginglen was placed under oath.   Plea Transcript, p. 5-71.  Ginglen stated that he had earned a Bachelor of Liberal Studies degree from Western Illinois University and that he could read, write, and understand English.  Ginglen stated that he had never been treated in a mental hospital, clinic, or institution of any kind, that he was not currently under the care of a psychiatrist, and that he had never been under the care of a psychiatrist for a mental disorder.  Ginglen stated that he was currently under the care of a doctor due to vision problems and that the doctor "prescribed an aspirin for blood thinning, and he prescribed nose

spray initially and then a CAT scan." <u>Id</u>., p. 7.  The Court inquired as to the results of the CAT scan, which occurred while Ginglen was detained. The Deputy United States Marshal reported that the results were negative and a copy of the radiology report confirming this was docketed that same day as Case No. 04-30052, d/e 24.

Ginglen stated that he was able to read the Plea Agreement and could understand it as well as any layman could.  <u>Plea Transcript</u>, p. 12.  Ginglen stated that he felt that he could understand the proceedings, pay attention, and appreciate the seriousness of the decisions he was making.  When asked whether he was "taking any medication for anything at this time," Ginglen responded "[o]nly the aspirin that the doctor in Taylorville prescribed." <u>Id</u>., p. 13.  Ginglen explained that he went through two prescriptions of nose spray because the doctor believed that Ginglen's sinuses could be affecting his optic nerves; however, the medication did not seem to do much and it was discontinued.  The Court reiterated, "that's all you're doing now, is taking the aspirin?" <u>Id</u>., p. 14.  Ginglen replied "Yes, ma'am." <u>Id</u>.  The Court asked, "Have you had any narcotic drugs, medicine, pills, alcoholic beverages, anything other than the aspirin in the last 24 hours?"  <u>Id</u>. Ginglen replied "No, ma'am." <u>Id</u>.

Neither the Government nor defense counsel expressed any doubts as to Ginglen's competence to enter a plea. The Court determined that, based on Ginglen's responses and the Court's observations of him, Ginglen was competent to enter a knowing plea. In reaching this decision, the Court noted that it had no difficulty communicating with Ginglen, that Ginglen's answers had been responsive, and that Ginglen appeared to be alert and attentive. Plea Transcript, p. 15.

The Court then inquired as to whether Ginglen felt he had had enough time and opportunity to discuss the case with his attorney. Ginglen answered "Yes, ma'am." Plea Transcript, p. 15. The Court asked Ginglen if he was satisfied with the way defense counsel had represented him, and Ginglen replied "I think he's done an exemplary job." Id.

The Court turned its attention to the Second Superseding Indictment. The Court asked Ginglen whether he had read the charges to which he intended to plead guilty and discussed them with his attorney. Ginglen indicated that he had done so. The Government then stated on the record the elements of 18 U.S.C. § 2113(a) & (d) and 18 U.S.C. § 924©. Ginglen stated that he understood the nature of the offenses.

The Court then outlined the penalty scheme, noting the maximum

possible punishment that could be imposed on each count.  Plea Transcript,

p. 19-21.  The Court also addressed minimum penalties for the § 924©

counts, Counts 12 and14, as follows:

> THE COURT: . . .  for the first conviction, which would be
> Count 12, you face a sentence of at least seven years in prison
> if the firearm was brandished, displayed and pointed at
> someone, or five years in prison if that did not occur, but you
> possessed the gun. And that sentence would be in addition to
> the sentences on all the bank robbery charges.  Do you
> understand that?
>
> MR. GINGLEN: Yes, ma'am.
>
> THE COURT: Or on top of.
>
> For that offense you would also have to pay a 100 dollar
> mandatory special assessment.
>
> For the second charge of carrying and using a firearm during a
> crime of violence; which would be Count 14 here; the sentence
> would be at least 25 years in prison served consecutive to all
> other counts of conviction.  So that means in addition to.  In
> addition to whatever you got on the bank robberies and in
> addition to the 7 years for Count 12.
>
> In addition, on Count 14, you would be ordered to pay a 100
> dollar mandatory special assessment as well.
>
> Do you understand that?
>
> MR. GINGLEN: Yes, ma'am.

Id., p. 20-21.  The Court informed Ginglen that the maximum possible

sentence he was looking at was life in prison.  Id., p. 21.  Ginglen indicated that he understood.  Id., p. 21-22.  When given the opportunity to ask any questions concerning the nature of the charges or possible penalties, Ginglen declined.  Id., p. 22.

The Court went on to remind Ginglen that he did not have to plead guilty and he could instead have a jury trial on the charges.  The Court stated "if you would like a jury trial at any point during this hearing today, just tell me and I will see that the case proceeds on to trial as quickly as possible.  Do you understand that?"  Plea Transcript, p. 23.  Ginglen replied, "Yes, ma'am."  Id.  The Court then explained the rights associated with a jury trial, and Ginglen, on the record, waived those rights.

The Court turned to the Plea Agreement, inquiring whether Ginglen had had the opportunity to read the Plea Agreement and discuss it with his attorney.  Ginglen replied, "Yes, ma'am."  Plea Transcript, p. 32.  The Court asked whether Ginglen felt that he understood the terms of the Plea Agreement, to which Ginglen replied, "I do."  Id., p. 32-33.  Ginglen also acknowledged that he was pleading guilty of his own free will.  Id., p. 33.

The Court specifically addressed the Plea Agreement's waiver provisions.  The Court explained Ginglen's right to appeal his conviction

16

and sentence and noted that, pursuant to the Plea Agreement, Ginglen was giving up his right to appeal everything except for the denial of the Motion to Suppress.  Ginglen indicated that he understood this.  <u>Plea Transcript</u>, p. 39.  The Court went on to address Ginglen's right to collaterally attack his conviction and sentence.  The Court explained that a collateral attack is sometimes called a § 2255 petition or a habeas corpus petition.  The Court stated that a collateral attack is a vehicle for an individual to raise a violation of Constitutional rights, including "that their attorney did a terrible job and didn't do adequately by them."  <u>Id</u>., p. 40.  After consulting with his attorney, Ginglen indicated that he generally understood the type of things related to a collateral attack.  <u>Id</u>., p. 40-41.  Ginglen also acknowledged that he understood that, as a part of the Plea Agreement, he was giving up his right to bring a collateral challenge to his conviction or sentence.  When asked if that was his wish, Ginglen replied, "It is."  <u>Id</u>., p. 41.  The Court also explained that "when people plead guilty they don't necessarily have to give up these rights to bring appeals on every issue or collateral challenges."  <u>Id</u>.  Ginglen indicated that he felt he was getting something from the Plea Agreement that made it worthwhile for him to give up these rights.  <u>Id</u>., p. 41-42.  After detailing other provisions of the Plea

17

Agreement, the Court asked Ginglen, "Do you have any questions about your plea agreement?" Id., p. 48.  Ginglen replied, "No, ma'am." Id.

The Government then provided a factual basis for Counts 1, 3, 5, 7, 9, and 11-14.  Plea Transcript, p. 48-65.  As the Government presented the factual basis for each count, the Court paused the proceedings and asked whether Ginglen deemed the recitation to be accurate.   On several occasions, Ginglen detailed minor disagreements with the Government's recitation of the facts, which the Court explored.  With respect to Counts 9, 13 and 14, Ginglen indicated that he did not remember a lot about the underlying incidents.  Id., p. 58, 62-63.  However, Ginglen agreed that the Court could accept the facts given by the prosecutor in determining whether Ginglen committed the offenses in question.  The Court found that there was a factual basis to support the plea on each of the counts involved in the Plea Agreement.  Id., p. 65.

The Court then listed each count involved in the Plea Agreement, and Ginglen indicated that he pled guilty to each.  Id., p. 66-71.  When entering his pleas to the § 924© counts, Counts 12 and 14, Ginglen initially expressed disagreement with the characterization that he brandished a firearm.  Id., p. 67-71.  The Court explained the charges and the definition

18

of "brandished" and informed Ginglen that, if he was not guilty of the charge, he should tell the Court he was not guilty and the matter would proceed to trial. The Court reiterated, "If you're not guilty, I say let's go to trial. If you did it and you want to plead guilty, fine." Id., p. 70. Ginglen indicated that he wished to plead guilty to Counts 12 and 14. Id., p. 70-71. At the conclusion of the hearing, the Court found that Ginglen was "fully competent and capable of entering an informed plea. That he [was] aware of the nature of the charges and consequences of his guilty pleas. That his pleas of guilty were knowingly and voluntarily made and supported by a factual basis as to each count." Id., p. 71.

The Court may consider Ginglen's signature on the Plea Agreement and his statements during the plea colloquy as evidence of a knowing and voluntary waiver. See United States v. Bush, 2009 WL 3872069, at *2 (N.D. Ind. November 17, 2009) (applying standard in § 2255 case). Ginglen's "sworn statements at his change of plea hearing are presumed to be truthful when determining whether his plea was knowing and voluntary." Berry v. United States, 2009 WL 2589222, *4 (N.D. Ind. August 20, 2009) (citing Bridgeman v. United States, 229 F.3d 589, 592 (7th Cir. 2000)). The plea colloquy, detailed above, supports a finding that Ginglen was

competent and entered into the Plea Agreement and the plea knowingly and voluntarily. Additionally, the Plea Agreement itself recites that Ginglen understood his rights as they related to a collateral attack and made the waiver knowingly and voluntarily. Plea Agreement, p. 5, ¶ 11.

Ginglen argues that portions of the record belie his statements at the plea hearing and the representations in the Plea Agreement. Ginglen alludes in his pleading to being medicated and ingesting prescription medication on a daily basis; however, he fails to include specifics regarding the type of medication or identify the relevant time period. See Petition, p. 16. Additionally, Ginglen provides no evidence that he was taking medication at the time of the plea hearing. Moreover, Ginglen stated under oath at the plea hearing that he had discontinued use of the prescription nasal spray and that he had ingested no medication other than aspirin in the twenty-four hours prior to the hearing. Ginglen has not challenged these statements here, but rather avers that his recollections of the change of plea hearing are few. Notification of Filing Affidavits (d/e 13), p. 8, ¶ 47.

Ginglen avers that, during the change of plea hearing, there were several charges that he questioned because he could not recall doing what the prosecutor described. His statements during the plea hearing, especially

20

when considered in combination with his signing of the Plea Agreement, belie this undetailed, self-serving assertion.  Hanhardt v. United States, 596 F.Supp.2d 1173, 1191 (N.D. Ill. 2009) (noting in the § 2255 context that "[t]he Seventh Circuit has been clear that it is not permissible under the law for criminal defendants to gain from contradicting earlier sworn statements made at a plea hearing.").

At the change of plea hearing, as the Government presented the factual basis for each count, the Court paused the proceedings and asked whether Ginglen deemed the recitation to be accurate.  On several occasions, Ginglen gave detailed explanations of his disagreement with the Government's recitation.  Plea Transcript, p. 50-65.  On the occasions that Ginglen stated that he did not remember much about the occasion in question, Ginglen conceded that the Court could accept the facts as presented by the Government.  When entering his pleas to the § 924© counts, Ginglen initially expressed disagreement with the characterization that he brandished a firearm.  Id., p. 67-71.  However, when the Court explained that Ginglen had the right to go to trial, Ginglen explained that he wanted to plead guilty and did, in fact, plead guilty to the charges. Ginglen avers that he recalls thinking during the change of plea hearing that

he "had to ensure that the conditional guilty plea was accepted so that we could move on to the appeal that [defense counsel] expressed so much confidence in." Notification of Filing Affidavits, p. 8, ¶ 47. This does not evidence that his plea was either incompetent or unknowing. Rather, it supports a finding that in accepting the Plea Agreement and pleading guilty, Ginglen made "'a voluntary and intelligent choice among the alternate courses of actions open to [him].'" Berkey v. United States, 318 F.3d 768, 773 (7th Cir. 2003) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

Ginglen has submitted Affidavits from several other individuals in support of his request for § 2255 relief. Ginglen submitted an Affidavit from his ex-wife Donna Ginglen, who avers that from September 2004 to December 2005 she was in telephone contact with Ginglen. Notification of Filing Affidavits, p. 11. According to Donna, during this time Ginglen seemed disoriented and confused and lacked cognitive recognition as to the gravity of his circumstances. Donna further characterized Ginglen as having delusional ideas about his predicament, depressed, and even suicidal. Donna opines that Ginglen "was suffering from a psychological disorder of some kind during the period of his criminal offenses and subsequent

proceedings." Id., p. 11, ¶ 8.

Ginglen also submitted an Affidavit from his girlfriend, Theresa Terrell, who avers that she had been acquainted with Ginglen for approximately twelve years. Notification of Filing Affidavits, p. 12. Terrell further avers that from September 2004 to December 2005 she was in telephone contact with Ginglen and occasionally visited him in the Christian County Jail. According to Terrell, during that time period, she noticed that Ginglen's mind seemed to wander and he had difficulty concentrating on a single subject. Terrell opined that Ginglen exhibited all of the signs of clinical depression. Terrell further opined that Ginglen "was suffering from a psychological disorder of some kind during the period of his criminal offenses and subsequent proceedings." Id., p. 12, ¶ 7.

Ginglen also submitted an Affidavit from his daughter Kimbra McFadden. Letter and Affidavit of Kimbra L. McFadden (d/e 19). McFadden avers that from September 2004 to December 2005 she had infrequent contact with Ginglen. Despite her infrequent contact, McFadden avers that she was worried about her father's competence. McFadden states that Ginglen had an inability to recall certain events and seemed extremely depressed. McFadden opined that her father "was experiencing the early

stages of Alzheimer's or some such disorder." <u>Id.</u>, p. 2, ¶ 6. McFadden further opined that Ginglen "was suffering from a mental disorder of some kind during the period of his criminal offenses and subsequent proceedings." <u>Id.</u>, p. 2, ¶ 8.

These Affidavits are insufficient to warrant an evidentiary hearing. McFadden admittedly had infrequent contact with her father after his arrest, and Donna Ginglen's only contact was by telephone. None of these Affidavits specifically address Ginglen's mental competency at the time of the Plea Agreement and plea. Additionally, even if he were suffering from the mental disorders described in the Affidavits, Ginglen's interaction with the Court at his plea hearing contradicts any implication that the disorders negated his competency at that time. <u>See</u> <u>Hanhardt</u>, 596 F.Supp.2d at 1189-91 (rejecting affidavits of family members that were directly contradicted by the petitioner's sworn statements at his plea hearing).

Ginglen further argues that information contained in a Motion to Continue (Case No. 04-30052, d/e 19), filed March 16, 2005, reveals that he was unable to enter a competent, knowing plea and put the Court on notice of this fact. The Court disagrees. On March 16, 2005, defense counsel filed the Motion to Continue, seeking a continuance of the final

pretrial conference and trial.  As a part of the proffered justification for the

continuance, the Motion represented the following:

> 2.    That the Defendant verily believes that he was suffering
> from a diminished capacity during the period of time which is
> alleged in the Bill of Indictment.
>
> 3.    That as a result of the Defendant's belief, counsel for the
> Defendant is in the process of requesting a psychiatric
> examination of the Defendant.

Case No. 04-30052, Motion to Continue (d/e 19), p. 1.  This information

focuses on Ginglen's state of mind at the time of the offenses and addresses

only Ginglen's own perceptions of his capacity at that time.  None of this

information addresses Ginglen's competence to enter into the Plea

Agreement in July 2005.  Ginglen avers that the Motion to Continue is

misleading because: (1) it was defense counsel who first raised diminished

capacity and (2) it was defense counsel's suggestion to schedule a psychiatric

evaluation.  Notification of Filing Affidavits, p. 7, ¶ 43.  Neither of these

contentions, however, are inconsistent with the plain reading of the Motion

to Continue, and they do not support a finding that Ginglen was mentally

incompetent to enter a plea in July 2005.

Other evidence identified by Ginglen is similarly removed in time from

the relevant period.  The Court allowed Ginglen to supplement the record

with Champaign Police Department reports from the time of Ginglen's arrest in August 2004, which indicate that, prior to the arrest, the officers involved in the arrest believed that Ginglen might be suicidal.  <u>Text Order, dated August 10, 2007</u>; <u>Motion to Expand the Record (d/e 23)</u>.  Ginglen also points out Jared Ginglen's testimony from the suppression hearing that Jared wore a bullet proof vest when he and his brothers went to the Defendant's house in August 2004, because he was concerned about the Defendant's mental state and a statement that the Government made at oral argument during the appeal of the Motion to Suppress that acknowledged this testimony.  This information all relates to unconfirmed beliefs regarding Ginglen's mental state prior to his arrest and nearly a year before the change of plea.  It does nothing to undermine Ginglen's competence at the time he entered into the Plea Agreement and plea.

Finally, Ginglen asserts that statements made by the Court at sentencing support his claims in Ground 1.  In sentencing Ginglen, the Court suggested that "something snapped in 2003."  <u>Sentencing Transcript</u>, p. 15.  In analyzing what led Ginglen to that point, the Court stated,  "[i]t almost suggests that there's something medically wrong with you.  But we have the benefit of having had a CAT scan of your brain because of other

complaints that were made.  And there was nothing found that is wrong with you in terms of a tumor that would explain this aberrant behavior." Id., p. 21.  Again, these statements relate to Ginglen's mental state at the time of the offenses and do not address his mental state at the time of the plea.  Thus, Ginglen fails to identify facts sufficient to justify a hearing on the issue of whether he was competent to enter into the Plea Agreement and plea and whether he did so knowingly.

Ginglen's allegations regarding the voluntary nature of his waiver are scant.  Ginglen concedes that he signed the Plea Agreement, but noted that "[i]t was definitely not what [he] wanted to do, because [he] did not understand or agree with all of the charges reiterated in the agreement, but [he] felt [he] had no choice."  Notification of Filing Affidavits, p. 7, ¶ 44. According to Ginglen, he was sure that defense counsel would withdraw if Ginglen failed to take his advice and he could not face the uncertainty of coping with his situation without a lawyer.  Id.  This does not rise to the level of coercion sufficient to negate the voluntary nature of the Plea Agreement or plea.  Ginglen does not identify any specific details as to why he thought that defense counsel would withdraw if Ginglen refused to plead guilty.  Additionally, during the plea colloquy, in explaining Ginglen's right

to a trial, the Court expressly informed Ginglen that he had the right to representation during trial.  The following exchange occurred:

> THE COURT: . . .  And of course at trial you have the right to the assistance of an attorney to represent you.  Mr. Hamm is your attorney.  He, I'm sure, would represent you at trial if that were your wish.  If he couldn't or wouldn't for any reason, we would make sure another capable attorney represented you at trial.  And if you were indigent and couldn't afford an attorney, one would be appointed to represent you at trial without cost to you.  Do you understand that?
>
> MR. GINGLEN: Yes, ma'am.

Plea Transcript, p. 23.  Thus, Ginglen fails to identify facts sufficient to justify a hearing on the voluntary nature of his collateral attack waiver or his plea.  Therefore, it is clear from the record that Ginglen competently, knowingly, and voluntarily entered into the Plea Agreement and plea.

II.   GROUND 2

In Ground 2, Ginglen asserts that trial counsel was ineffective in failing to explain the Plea Agreement, failing to prepare Ginglen for the change of plea hearing, failing to apprise Ginglen of the mandatory minimum sentences under 18 U.S.C. § 924©, and failing to follow through on competency issues.  The ineffective assistance analysis is a familiar one.  To prevail on an ineffective assistance of counsel claim, a petitioner must

show that counsel's performance was objectively unreasonable or deficient and that he was prejudiced as a result. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). "Prejudice in the context of a guilty plea requires a showing that but for counsel's deficient performance, [the petitioner] would not have pleaded guilty." <u>Galbraith</u>, 313 F.3d at 1008 (citations omitted). Thus, to establish ineffective assistance of counsel as alleged in Ground 2, Ginglen "must show (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial." <u>Bethel v. United States</u>, 458 F.3d 711, 716 (7th Cir. 2006).

Ginglen's first three allegations of ineffective assistance in Ground 2 are quickly resolved on prejudice grounds. Ginglen concedes that defense counsel reviewed the Plea Agreement with him. <u>Notification of Filing Affidavits</u>, p. 7, ¶ 44. Ginglen avers that he raised serious questions about the waiver provisions with defense counsel, at which point defense counsel consistently characterized the language as boilerplate legalese. <u>Id</u>., p. 7, ¶ 46. However, the Court addressed the waiver provisions in detail at the change of plea hearing prior to accepting Ginglen's plea. <u>Plea Transcript</u>, p.

39-42.   The Court also offered Ginglen the opportunity to raise any questions about his Plea Agreement, which Ginglen declined.  <u>Id</u>., p. 48. Thus, Ginglen cannot establish prejudice from counsel's alleged failure to fully explain the Plea Agreement including the waiver provisions.  Ginglen's assertion that counsel failed to prepare him for the plea hearing is similarly unavailing.  Ginglen responded appropriately throughout the hearing, and at the few points during which he asked for time to consult with his attorney, the Court allowed him to do so.   Ginglen cannot establish prejudice arising out of this alleged shortcoming.

Ginglen avers that defense counsel failed to explain the requisite mandatory minimum sentences related to the § 924© counts.  <u>Notification of Filing Affidavits</u>, p. 7, ¶ 45.  According to Ginglen, had he known this information, he would not have entered into the Plea Agreement.   <u>Id</u>. Ginglen, however, is unable to establish that this alleged failure prejudiced him in any way.  The mandatory minimum sentences for the firearm counts are plainly set out in the Plea Agreement.   <u>Plea Agreement</u>, p. 3-4. Additionally, prior to accepting Ginglen's plea, the Court addressed the mandatory minimum sentences in detail.   <u>Plea Transcript</u>, p. 20-21. Ginglen indicated that he understood the information and exhibited this

understanding later in the plea colloquy when he sua sponte raised the mandatory minimum sentences while the Court was instructing him regarding his agreement not to ask for a sentence below the applicable United States Sentencing Guideline range. Id., p. 43. Ginglen's self-serving assertion that he did not know about the mandatory minimum sentences is insufficient to justify an evidentiary hearing on this issue.

Finally, Ginglen asserts that defense counsel was ineffective in failing to pursue competency issues. The Government has presented a verified statement from defense counsel, indicating that counsel at one point considered that Ginglen may have been suffering from a mental defect. Defense counsel avers that he did not obtain a competency exam because, after numerous discussions with Ginglen, counsel determined that it was obvious that Ginglen was able to communicate and understand everything discussed. Government's Second Motion to Supplement its Opposition to § 2255 Petition (d/e 20), Ex. 1, p. 1. Counsel based this conclusion on his extensive prior experience with Ginglen, which began when the two men were in high school together. As set forth in the Court's analysis of Ground 1, the record reveals that Ginglen was competent at the time of the Plea Agreement. Counsel's decision not to pursue competency issues was not

objectively unreasonable.  This allegation of ineffective assistance fails to meet the first prong of the <u>Strickland</u> analysis.  Ginglen fails to identify facts sufficient to justify a hearing on his claim that counsel rendered ineffective assistance in connection with the Plea Agreement and plea.

III.   <u>GROUNDS 3 through 11</u>

Because it was knowingly and voluntarily made, Ginglen's collateral attack waiver precludes all claims unrelated to the negotiation of his Plea Agreement.  Grounds 3 through 11 do not relate to the negotiation of Ginglen's Plea Agreement and are, therefore, waived.  Ginglen is not entitled to relief under § 2255, and his Petition and Amended Petition are denied.

Where, as here, "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the Court may deny a § 2255 motion without an evidentiary hearing.  28 U.S.C. § 2255(b).  Therefore, Ginglen's Motion for Evidentiary Hearing and Appointment of Attorney (d/e 45) is denied.

THEREFORE, Petitioner William Ginglen's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (d/e 1), Amended § 2255 Motion with Supporting Memorandum (d/e 12), and Motion for Evidentiary Hearing and Appointment of Attorney

(d/e 45) are DENIED.  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:   December 17, 2009

       FOR THE COURT:


                         _____s/  Jeanne E. Scott_____
                                 JEANNE E. SCOTT
                       UNITED STATES DISTRICT JUDGE